Elaine SMYTHE, Plaintiff,

v.

**AMERICAN RED CROSS BLOOD SERVICES NORTHEASTERN NEW YORK REGION and Albany Medical Center Hospital, Defendants.**

No. 88–CV–1257.

United States District Court,
N.D. New York.

July 17, 1992.

Elaine Smythe, pro se.

Maynard O'Connor & Smith (Mae A. D'Agostino, of counsel), Albany, N.Y., for Albany Medical Center Hosp.

Nixon Hargrave Devans & Doyle (Eric J. Ward, Andrew Rose, of counsel), Rochester, N.Y., for American Red Cross.

## MEMORANDUM—DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

Plaintiff originally commenced this action in New York State Supreme Court. Pursuant to 28 U.S.C. § 1441 and 36 U.S.C. § 2,[1] defendant American Red Cross ("Red Cross") removed the action to this court with defendant Albany Medical Center's ("Hospital") concurrence. In her complaint, plaintiff alleged that the Hospital malpracticed upon her and negligently administered blood and blood products in contravention of accepted medical and surgical standards and that this negligence caused her injury. *See* Plaintiff's Complaint at ¶ 15. In addition, plaintiff alleged that the Red Cross was negligent in its procedures for gathering and distributing blood and blood products and that this negligence likewise caused her injury. *See* Plaintiff's Complaint at ¶ 23.

Although at certain times during this litigation plaintiff has been represented by counsel, presently she is proceeding *pro se*. Due to the difficulty plaintiff has encountered in her attempts to retain counsel to represent her, the court has been very lenient in granting extensions of time to plaintiff so that she might conduct discovery. Despite this favorable treatment, however, the court found it necessary to place this case on its March 12, 1992, dismissal calendar pursuant to Local Rule 11.[2] On March 12th, Ms. Smythe appeared before the court and requested additional time to retain an attorney. The court agreed to an additional extension until May 7, 1992, at which time, the court informed Ms. Smythe, a trial on this matter would commence. In addition, the court explained to Ms. Smythe that if she were able

to retain counsel prior to May 7th, the court would be willing to sit down with both sides to attempt to settle this matter. If she were unsuccessful in her attempt to retain counsel, however, the court told Ms. Smythe that she should be ready for trial on May 7th.

Subsequently, on April 14, 1992, counsel for the Red Cross and the Hospital apprised the court that they intended to move for summary judgment. Therefore, they requested that the court postpone the trial until after its determination of these motions. The court agreed to this request. It is these summary judgment motions which are presently before the court.

### BACKGROUND

On May 2, 1986, plaintiff was admitted to the Hospital for emergency quadruple bypass surgery. *See* Plaintiff's Response to Red Cross' Request for Interrogatories at ¶ 6. Upon her arrival at the Hospital, it was determined that plaintiff's platelet count was too low and that this would interfere with her emergency surgery. Therefore, plaintiff received a transfusion of platelet concentrate from whole blood, unit number 56F28234, prior to her operation. *See* Red Cross' Answers to Plaintiff's Interrogatories at ¶ 19c.

The unit of blood in question was donated to the Red Cross on April 30, 1986. *See* Lamberson Declaration at ¶ 17. Prior to the donation, the Red Cross presented the donor with a donor education pamphlet entitled "Latest Facts: Donor and Patient Safety: What You Should Know About Giving Blood." *See id.* The Red Cross' employees instructed the donor to read the pamphlet before proceeding with his donation. *See id.* In addition to this oral instruction, the literature itself instructed

---

**1.** On June 19, 1992, the United States Supreme Court held that the "sue and be sued" provision of the American National Red Cross' charter, 36 U.S.C. § 2, confers original federal court jurisdiction over all cases to which the Red Cross is a party. *American Nat'l Red Cross v. S.G.*, —— U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).

**2.** Local Rule 11 provides that

[c]ivil causes in which no action has been taken for more than one year may be called for review upon not less than fifteen (15) days' notice by mail addressed to the attorneys of record, or to the parties if appearing pro se. The Court may thereupon enter an order dismissing the cause for want of prosecution, or continuing it, or may make such other order as justice may require.

the donor to review it carefully and informed him that he would be asked to sign a statement indicating that he understood the information contained therein. *See id.*

The purpose of this pamphlet was to help prevent the spread of certain illnesses, including AIDS, by blood transfusions. The pamphlet described the groups of individuals who, according to the Federal Drug Administration ("FDA"), were most in danger of contracting and spreading AIDS. In addition, the pamphlet warned that people in these groups must not give blood. It also described the signs and symptoms of AIDS and advised the donor that if any of the information in the pamphlet regarding AIDS or other transmissible diseases pertained to him, he should not give blood. After reading the pamphlet, the donor signed a statement indicating that he had read and understood the information contained therein. *See* Red Cross' 10(j) Statement, Appendix 5—Donor Health History Card.

In addition to reading this pamphlet, the donor was also required to answer approximately twenty questions concerning his medical history. These questions included several specifically designed to elicit information regarding his exposure to AIDS. *See id.* None of the donor's responses indicated that he should be disqualified from giving blood. After answering these questions, he signed a statement affirming that he had accurately answered each of them and that he was donating his blood to the Red Cross voluntarily. *See id.*

After the donor signed this statement, a nurse for the Red Cross gave the donor a brief physical examination that included checking his temperature, pulse, blood pressure and hemoglobin count. *See* Red Cross' Answers to Plaintiff's Interrogatories at ¶ 9e.2. The results of these tests were within the appropriate ranges. *See* Red Cross' 10(j) Statement, Appendix 5—Donor Health History Card. The nurse also examined the donor's arms to confirm that he was not an intravenous drug user and that he did not have any infectious skin diseases. *See* Lamberson Declaration at ¶ 25. Only after all of these procedures were completed did the Red Cross' nurse draw the donor's blood.

Following the donation, unit number 56F28234 was tested for antibodies to HIV using an FDA-licensed test that the Red Cross and many volunteer blood collectors used for screening the blood supply at that time. *See* Red Cross' 10(j) Statement, Appendix 7; Lamberson Declaration at ¶ 27. The test result was negative. *See id.* The blood also was subjected to several other serologic tests, including blood typing, screening for atypical antibodies, and testing for syphilis and the hepatitis B virus. *See* Red Cross' 10(j) Statement, Appendix 8; Lamberson Declaration at ¶ 27. The results of these tests were also negative. *See id.* As a final precaution, the Red Cross checked its National Donor Deferral Registry to ensure that the donor had not previously been deferred from giving blood. *See* Lamberson Declaration at ¶ 22. Finding no such deferral, the Red Cross then processed the donated blood into components and distributed the platelet concentrate from this unit to the Hospital where it was transfused into plaintiff on May 2, 1986. *See* Red Cross' Answers to Plaintiff's Interrogatories at ¶ 19c; Lamberson Declaration at ¶ 29. At no time, either before or after his donation, did the donor inform the Red Cross that his blood should not be used. *See* Lamberson Declaration at ¶ 29.

On June 25, 1986, the donor of unit 56F28234 returned to the Red Cross to donate more blood. As was its practice, the Red Cross tested this new donation for HIV antibodies. This unit tested repeatedly reactive in the FDA-licensed screening test for HIV antibodies and upon additional testing was confirmed to be positive. *See* Lamberson Declaration at ¶ 30. Pursuant to its policy, the Red Cross attempted to identify previous recipients of that donor's blood. It was through this procedure that the Red Cross identified Ms. Smythe. On July 30, 1986, the Red Cross notified the Hospital of this information. *See* Red Cross' 10(j) Statement, Appendix 10. Upon receiving this notice, the Hospital called plaintiff to arrange for HIV antibody testing. Plaintiff submitted to the testing and

as a result learned that she was HIV positive.

All of the blood administered to plaintiff at the Hospital in 1986 came from the Red Cross. Pursuant to a contract between the Hospital and the Red Cross, the Red Cross bore the responsibility for testing all blood before delivering it to the Hospital. *See* Albany Medical Center's Exhibit F. Thus, the Hospital had no contractual duty to test the blood. Moreover, plaintiff does not dispute the fact that she required the emergency surgery or that the surgery was a success. *See* Transcript of Proceedings Before this court dated March 12, 1992 at 17. Under these circumstances, the Hospital contends that it is entitled to judgment as a matter of law. Likewise, the Red Cross contends that it is entitled to judgment as a matter of law because its procedures both complied with all applicable FDA regulations and American Association of Blood Banks standards and were consistent with the prevailing practices of volunteer blood collectors throughout the nation in April 1986. Plaintiff orally informed this court that she opposed defendants' motions. However, she submitted no papers in opposition thereto nor did she appear before the court on May 5, 1992, at which time the court entertained oral argument on these motions.

## DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Rather, Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") requires that there be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the original). Material facts are defined as those which might affect the outcome of the suit under the governing law. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265, 274 (1986). Once the moving party has met this burden, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact. In this regard, the non-movant must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor." *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement)).

Moreover, as a preliminary matter, the non-movant must "[m]ake a showing sufficient to establish the existence of [all of the] element[s] essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue as to any material fact because "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Under these circumstances, the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Furthermore, for purposes of determining whether or not to grant summary

judgment, the language of Rule 56 limits the information which the court may consider to the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file. In this regard, movants' uncontested assertions in their Rule 10(j) Statement are deemed admitted for purposes of deciding whether summary judgment should be granted. *See* Local Rule 10(j); *see also Blackwelder v. Safnauer,* 689 F.Supp. 106, 112–13 n. 2 (N.D.N.Y. 1988), *appeal dismissed,* 866 F.2d 548 (2d Cir.1989). In contrast, as one court in this Circuit has stated

> [i]t is now well-settled that legal memoranda and oral argument are not evidence and "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 ([9th Cir.] 1978) [, *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979) ]; *see also Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 46 (1st Cir.1984); *Watts v. United States,* 703 F.2d 346, 353 (9th Cir.1983).

*United States v. United States Currency in Amount of $23,481.00,* 740 F.Supp. 950, 955 (E.D.N.Y.1990).

It is with these requirements in mind that he court must determine whether summary judgment is warranted in this case.

### B. Plaintiff's Negligence Claims

Under New York law, in order to prevail in an action based on negligence, plaintiff must demonstrate that defendants owed her a duty, that they breached this duty, and that this breach was the proximate cause of her injury. *See Kazanoff v. United States,* 945 F.2d 32 (2d Cir.1991) (citing *Akins v. Glens Falls City School Dist.,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531 (1981)). More specifically, in the context of medical negligence claims, the Red Cross and other volunteer blood collections organizations are held to the prevailing standard of care in their profession. *See Hoemke v. New York Blood Center,* 912 F.2d 550, 552 (2d Cir. 1990) (citing *Henry v. Bronx Lebanon*

*Medical Center,* 53 A.D.2d 476, 480–81, 385 N.Y.S.2d 772, 775 (1st Dep't 1976)); *see also Valdiviez v. United States,* 884 F.2d 196 (5th Cir.1989); *Shelby v. St. Luke's Episcopal Hosp.,* No. H–86–3780, 1988 WL 28996, 1988 U.S. Dist LEXIS 16995 (S.D.Tex. Mar. 17, 1988); *United Blood Servs. v. Quintana,* 827 P.2d 509 (Colo. 1992). Notwithstanding this general rule, however, if a given profession lags behind in adopting procedures that reasonable prudence would dictate should be instituted, the court is free to hold a given defendant to a higher standard of care than that adopted by the applicable profession. *See Hoemke,* 912 F.2d at 552 (citing *The T.J. Hooper,* 60 F.2d 737, 740 (2d Cir.) (Learned Hand, J.), *cert. denied,* 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932) (other citations omitted)).

There is no indication that volunteer blood collection organizations such as the Red Cross have lagged behind in adopting procedures to detect AIDS and other viruses which can be carried by the blood supply. In fact, a brief review of the history of AIDS and HIV detection supports a contrary conclusion. It was not until May 1984 that Dr. Gallo of the National Institute of Health's National Cancer Institute reported that he had isolated the retrovirus that causes AIDS. *See* Lamberson Declaration at ¶ 13. Just prior to Dr. Gallo's published report, the Secretary of Health and Human Services announced the isolation of the AIDS virus and proclaimed that a blood screening test would be forthcoming. *See* Lamberson Declaration at ¶ 14. Until March 1985, there was no licensed test available for the routine screening of blood to detect the presence of AIDS, antibodies to HIV, or HIV itself. On March 2, 1985, however, the FDA licensed a blood test to identify carriers of antibodies to HIV. *See* Lamberson Declaration at ¶ 15.

The Red Cross, along with other blood centers, promptly implemented this test. The test's effectiveness, however, is limited because it screens only for antibodies to HIV, not for the virus itself. *See id.* Consequently, blood tests such as this one li-

censed by the FDA and used by the Red Cross can detect most, but not all, HIV-infected persons. Due to the nature of the HIV virus, persons who carry and transmit HIV may not develop these detectable antibodies to HIV for a period of time commonly referred to as the "window period." The length of this "window period" ranges from a few weeks to as much as six months or more. *See* Lamberson Declaration at ¶ 16. (citing Menitove, *Current Risk of Transfusion Associated Human Immunodeficiency Virus Infection*, 114 Arch.Pathol.Lab. 330 (1990)). Unfortunately, there is no available test which can determine whether blood taken from an infected donor during this time period is tainted.

There is no dispute that the Red Cross and the Hospital owed plaintiff a duty to meet the prevailing standard of care in their professions. However, there is nothing in the record to support a finding that either defendant failed to meet the applicable standard. The Red Cross complied with all of the FDA regulations as well as the standards for blood banks and hospital transfusion services promulgated by the American Association of Blood Banks. *See* Lamberson Declaration at ¶¶ 11, 12. In addition, as outlined above, the Red Cross carefully screened all potential donors in an attempt to ascertain whether they were infected with HIV, AIDS, or any other blood transmissible diseases. Furthermore, with regard to the Hospital's behavior, it procured blood only from the Red Cross which was contractually responsible for testing the blood before it was delivered for use. There is nothing in the record to indicate that the Hospital failed to meet its duty of care to plaintiff by relying on the Red Cross' testing procedure for blood products.

Under similar circumstances, courts have granted summary judgment to defendants whose blood screening and testing procedures conformed to the applicable professional standards. *See generally Valdiviez*, 884 F.2d 196; *Shelby*, 1988 WL 28996, 1988 U.S. Dist. LEXIS 16995 (summary judgment granted because it was uncontroverted that blood bank had followed all recommended donor screening procedures, federally-mandated screening tests, and other standards of care mandated or recommended by standard setting organizations); *McKee v. Miles Lab., Inc.*, 675 F.Supp. 1060 (E.D.Ky.1987), *aff'd sub nom. McKee v. Cutter Lab., Inc.*, 866 F.2d 219 (6th Cir. 1989) (summary judgment granted because testing procedures complied with prevailing practice). Thus, on the basis of the facts before the court and the relevant case law, the court concludes that defendants did not breach their duty of care to plaintiff with regard to their handling of the blood with which plaintiff was transfused. Therefore, plaintiff has failed to establish an essential element of her *prima facie* case of negligence; and, consequently, defendants are entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Accordingly, the court grants defendants' motions for summary judgment.

## CONCLUSION

Based on the facts before it and the relevant case law, the court concludes that plaintiff has failed to establish a *prima facie* case of negligence against either the Red Cross or the Hospital. It is undisputed that both defendants owed a duty to plaintiff to conform to the standards of care applicable to their professions. There is no evidence, however, to support a finding that either defendant breached this duty. Thus, since plaintiff has failed to establish an essential element of her *prima facie* case, defendants are entitled to judgment as a matter of law. Accordingly, the court grants defendants' motions for summary judgment.

IT IS SO ORDERED.