**REXNORD HOLDINGS, INC.,**
**Plaintiff–Appellee,**

v.

**Maurice BIDERMANN, Defendant–**
**Appellant.**

No. 819, Docket 93–7762.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1994.

Decided April 7, 1994.

Robinson B. Lacy (Samuel W. Seymour, Julie B. Crockett, Sullivan & Cromwell, New York City, of counsel), for defendant-appellant.

Russell E. Brooks (John M. Conlon, Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for plaintiff-appellee.

Before: MINER and MAHONEY, Circuit Judges, and RESTANI, Judge.*

MINER, Circuit Judge:

Defendant-appellant Maurice Bidermann appeals from a money judgment entered in the United States District Court for the Southern District of New York (Patterson, J.) in favor of plaintiff-appellee Rexnord Holdings, Inc. ("RHI") in the amount of $12,989,312.64, the district court having found that Bidermann was in breach of his obligations under a Settlement Agreement and a Stock Purchase Agreement ("Agreements") dated November 25, 1991. The Agreements represented the resolution of a contract action brought by RHI against Bidermann. The breach occurred when Bidermann defaulted on a scheduled payment due under the provisions of the Agreements. On appeal, Bidermann contends that the district court erred in directing judgment for RHI because there were genuine issues of material fact concerning RHI's breach of the Agreements and its lack of good faith. Bidermann also argues that the judgment should be vacated because it was entered after the filing of his Chapter 11 bankruptcy petition, in violation of the automatic stay provided by 11 U.S.C. § 362. For the reasons that follow, we affirm.

## BACKGROUND

On August 1, 1991, RHI commenced an action against Bidermann in the United States District Court for the Southern Dis-

---

* Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

trict of New York for breach of contract for Bidermann's failure to purchase securities of Bidermann Industries U.S.A., Inc. from RHI. RHI originally had purchased the securities from Bidermann Industries subject to an option agreement providing that Bidermann would buy back the securities upon the exercise of the option by RHI. When RHI later sought to exercise the buy-back option, Bidermann refused to purchase the securities.

The parties resolved their dispute by executing the Agreements. The Agreements required Bidermann to pay RHI $22,571,748 in five installments: four payments in the amount of $5,000,000 each to be made on November 11, 1991, June 30, 1992, December 31, 1992 and June 30, 1993, and one final payment of $2,571,748 to be made on December 30, 1993. The terms of the Agreements allowed Bidermann a grace period until the following payment date before his failure to pay an installment would be an event of default under the Agreements.[1] On November 26, 1991, the parties stipulated to an order of dismissal of RHI's complaint. The Stipulation and Order of Dismissal provided that the district court would retain jurisdiction for the purpose of enforcing the Agreements. The Agreements provide that the district court "retains jurisdiction over the parties for the purpose of enforcing the [Agreements]. Any proceeding with respect to or arising out of [the Agreements] by or between the parties hereto shall be brought before the [district] court upon notice by personal service upon the attorneys for the parties."

It is undisputed that Bidermann failed to remit the scheduled December 31, 1992 payment, but that this failure was not deemed a default until June 30, 1993. Under the terms of the Agreements, RHI could accelerate the amounts due or "reduce its claim to judgment by any available judicial procedure" in the event of a default. The Agreements also provided that the "remedies provided herein are cumulative and not exclusive of any remedies provided by law or any other agreement."

On June 28, 1993, Bidermann informed RHI and its CEO, Jeffrey Steiner, that he could not meet the impending June 30 deadline for payment. Bidermann requested a 90-day moratorium on payments due under the Agreements to allow him to complete refinancing efforts or at least the opportunity to make a good-faith partial payment of the December 31, 1992 installment. On June 30, RHI allegedly informed Bidermann that it would not agree to the moratorium unless Bidermann made certain concessions on other business and financial issues that were unrelated to Bidermann's obligations under the Agreements. Bidermann rejected this proposal and, on July 1, 1993, RHI brought on a motion by order to show cause for judgment under the Agreements.

On that same day, RHI also effected service in France of orders attaching Bidermann's principal assets there, including shares of stock and bank accounts. These orders had been obtained *ex parte* by RHI from the Tribunal de Grande Instance in Paris on June 11, 1993, but did not become effective until July 1, the day after Bidermann was deemed in default of the Agreements. Also on July 1, RHI, *ex parte*, obtained from the district court an order of attachment for Bidermann's assets in the United States and served that order.

At a hearing that began at 2:30 p.m. on July 7, 1993, the district court heard arguments of counsel regarding the entry of judgment in favor of RHI. In support of its motion, RHI had submitted on July 1, 1993 an affidavit, with attached exhibits, subscribed by Donald Miller, Vice President and General Counsel of RHI. On July 7, 1993, Bidermann submitted a memorandum of law in opposition to the motion for judgment, but failed to submit any affidavits or documentary evidence. During the hearing, Bidermann's counsel conceded the default, but argued that RHI's application for an *ex parte* order of attachment in France violated both the express provisions of the Agreements and RHI's implied obligations of good faith and fair dealing. Counsel also alleged that

---

**1.** In the case of the final installment due on December 30, 1993, default would not take place until sixty days thereafter.

RHI sought to condition negotiations regarding the moratorium upon a waiver by Bidermann of certain rights in unrelated transactions that he had with RHI and Steiner. At the conclusion of the hearing, the district court stated: "I'm going to order that judgment be entered in favor of [RHI] in the amount of $12,946,748 principal and accrued interest.... So I'm going to endorse the original documents to that effect on this application.... I want to enter this today."

That same day, Bidermann's counsel advised the district court and RHI by letter that Bidermann had commenced a proceeding under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York by filing a petition at 3:18 in the afternoon, following the district court hearing. The following day, July 8, the money judgment was entered on the district court docket by the court clerk.[2] This appeal was taken following the entry of an order by the bankruptcy court modifying the automatic stay to permit Bidermann to appeal from the district court's judgment.

## DISCUSSION

On appeal, Bidermann argues that the judgment of the district court directing payment to RHI for the total amount owed under the Agreements should be vacated for two reasons. He first contends that there were genuine issues of material facts that should have precluded the district court from summarily granting judgment and, second, that the judgment is void because it was entered in contravention of the automatic stay that took effect when Bidermann filed his bankruptcy petition. We consider each claim in turn.

*1. Summary Judgment*

██ Although RHI's motion was for entry of judgment upon Bidermann's default under the Agreements, both parties have agreed that the standard applicable to a mo-

tion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be applied. Accordingly, we will review the district court's grant of judgment under those standards for the purpose of deciding this appeal. Summary judgment is appropriate "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1030 (2d Cir.1993). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. We review the grant of a motion for summary judgment *de novo, see Peoples Westchester Sav. Bank v. FDIC*, 961 F.2d 327, 330 (2d Cir.1992), and conclude that it was proper in this case.

██ Initially, we note that RHI established a *prima facie* right to summary judgment. A settlement agreement is to be construed according to general principles of contract law. *See City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir.1991). Under New York law,[3] an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F.Supp. 134, 137–38 (S.D.N.Y. 1985). Here, it is manifest that there was a contract between RHI and Bidermann and that RHI had performed its obligations thereunder. Moreover, RHI submitted the

---

**2.** Although there is some confusion regarding whether the judgment was entered on July 7 or 8, we assume for the purpose of our discussion that the judgment was entered on July 8, after the filing of Bidermann's Chapter 11 petition.

**3.** The Agreements provide that New York law governs their construction and enforcement.

affidavit of Miller, together with the Agreements, to establish that there was a breach by Bidermann and that RHI was entitled to judgment for damages in the amount owed under the Agreements. Indeed, it is uncontroverted that Bidermann was in default of his obligations under the Agreements. Therefore, it is clear that RHI established a breach of contract by Bidermann under New York law.

■ Since RHI properly supported its motion, Bidermann then had the burden of showing that there was a genuine issue of material fact to preclude summary judgment in favor of RHI. Bidermann, however, failed to submit competent evidence to meet his burden. *See* Fed.R.Civ.P. 56(e) (adverse party must respond to summary judgment motion by affidavit or other appropriate evidence and failure to do so results in the entry of judgment if it otherwise is appropriate). *Accord Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (Rule 56(e) requires that non-movant with burden of proof on dispositive issue oppose proper summary judgment motion with any of the evidentiary materials—affidavit, depositions, answers to interrogatories and admissions—listed in Rule 56(c)); *Boruski v. United States,* 803 F.2d 1421, 1428 (7th Cir.1986) (in submitting unverified memorandum plaintiff failed to meet requirement of defeating summary judgment with counter-affidavits or other competent evidentiary material); *Brown v. Chaffee,* 612 F.2d 497, 504 (10th Cir.1979) (once movant established *prima facie* case for summary judgment, opponent must show by "affidavits or otherwise" that there is a genuine issue of fact).

Although Bidermann pointed to certain issues of fact in his memorandum of law and at oral argument, he failed to provide evidentiary support for his contentions. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978) (legal memoranda and oral argument are not evidence and cannot create

issues of fact capable of defeating otherwise valid motion for summary judgment); *Smythe v. American Red Cross Blood Servs.,* 797 F.Supp. 147, 152 (N.D.N.Y.1992) (same); *Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1332 (D.Haw.1991) (same). Since Bidermann failed to offer competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment, entry of judgment in favor of RHI was proper.[4]

■ Even if Bidermann properly had opposed RHI's motion, judgment in favor of RHI still would be warranted. The allegations raised by Bidermann in his memorandum of law and at oral argument are that RHI breached the Agreements by failing to exercise good faith in connection with the moratorium negotiations and by obtaining the French attachment orders on June 11. We find no merit in the fair dealing allegations because the implied covenant of good faith and fair dealing only " 'precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.' " *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989) (quoting *Filner v. Shapiro,* 633 F.2d 139, 143 (2d Cir.1980)). Assuming that RHI did attempt to bargain for the release of other unrelated obligations in exchange for compromising its rights under the Agreements, such conduct does not constitute bad faith or unfair dealing.

While it is uncontroverted that Bidermann was in default of his obligation to tender a scheduled $5,000,000 payment owing under the Settlement Documents, it equally is clear that RHI had no obligation to grant Bidermann an extension of time so he could cure his default. Accordingly, there was nothing improper in RHI's demand for release from other obligations in exchange for granting Bidermann an extension of time to remit payment. The authorities relied upon by Bidermann as suggesting that RHI breached

4. Although Bidermann argues that he was not given sufficient time to submit an affidavit in opposition to the motion, this assertion is belied by his timely submission of a memorandum of law. Moreover, Bidermann fails to state any reason for neglecting to submit an affidavit pursuant to Rule 56(f), which allows a non-movant to state the reasons why he cannot properly oppose the motion and request sufficient time to do so. *See Miller v. Beneficial Management Corp.,* 977 F.2d 834, 846 (3d Cir.1992) (party seeking postponement of ruling on summary judgment ordinarily should file affidavit).

the implied covenant of good faith in enforcing its contractual rights are inapposite. *See K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 760–61 (6th Cir.1985) (bank did not have objective basis for refusing without prior notice to advance funds under loan agreement); *Brown v. AVEMCO Inv. Corp.,* 603 F.2d 1367, 1378–80 (9th Cir.1979) (creditor did not invoke lease agreement acceleration clause in good faith).

■ We conclude as well that RHI's actions in obtaining the French attachment orders did not constitute a breach of the Agreements. While the Agreements provide that "[a]ny proceeding with respect to or arising out of" the Agreements would be brought before the district court with notice to the other party, this clause must be read in conjunction with the sentence that precedes it, which provides that the district court "retains jurisdiction over the parties for the purpose of enforcing the [Agreements]." Therefore, it is clear that the term "proceeding" refers to an adjudication enforcing the parties' respective rights under the Agreements. *See Pharmaceutical Soc'y of N.Y., Inc. v. Cuomo,* 856 F.2d 497, 501 (2d Cir.1988) (interpretation of contract is a matter of law when there is no ambiguity in its language).

RHI complied with the relevant provisions of the Agreements by bringing on the proceeding subject of this appeal in the district court. The act of obtaining *ex parte* orders of attachment in France—where Bidermann is a resident and has assets—was not a proceeding within the meaning of the Agreements, because it was not brought to enforce the rights of either party under the Agreements. The attachments merely were incidental to the district court proceeding; they were obtained for security purposes to ensure that RHI would be able to collect on any judgment against Bidermann entered in the district court. *See* David D. Siegel, *New York Practice* § 313 (2d ed. 1991) ("order of attachment always serves a security purpose, since the property attached is held, actually or constructively, . . . to apply to the plaintiff's judgment in the action if the plaintiff should win"). Moreover, the provisional remedy of attachment, although *not* specified

in the Agreements, was permissible because the remedies specified were said to be "cumulative and not exclusive of any remedies provided by law or any other agreement." Accordingly, the attachment orders were not obtained in violation of the Agreements.

### 2. Automatic Stay

■ Bidermann also argues that the judgment of the district court should not be given effect because it was docketed after the filing of his Chapter 11 petition and thus was entered in violation of the automatic stay in bankruptcy. Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." 11 U.S.C. § 362(a)(1). The stay is effective immediately upon the filing of the petition, *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 982 F.2d 769, 776 (2d Cir.1992); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3d Cir.1991), and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect, *see 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988).

While the commencement or continuation of a judicial action or proceeding clearly is subject to the automatic stay of section 362, we do not believe that the simple and "ministerial" act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1). *See Savers Fed. Sav. & Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.),* 884 F.2d 145, 148 (4th Cir.1989) (noting that, while court must halt deliberations when bankruptcy intrudes, an arbitration award may be approved "as valid under the [automatic] stay only if the panel decided it in word and deed before [the petition date], leaving for post-petition achievement only the clerical act of recording the award"); *Teachers Ins. & Annuity Ass'n v. Butler,* 58

B.R. 1019, 1022 (S.D.N.Y.) (rejecting argument that *entry* of judgment was "void and of no legal force or effect" on ground that filing of the signed judgment and entry on the docket by the clerk "was a purely ministerial act" that did not violate the automatic stay of § 362), *motion to stay granted in part and denied in part*, 803 F.2d 61 (2d Cir.1986). *See also Heikkila v. Carver (In re Carver)*, 828 F.2d 463, 464 (8th Cir.1987) (rejecting debtor's claim that "routine certification" by clerk of court that debtor failed to redeem contract within redemption period was "judicial proceeding" within meaning of § 362).

In the present case, the district court "So ordered" the entry of judgment and endorsed RHI's motion papers to that effect on July 7; prior to the filing of Bidermann's bankruptcy petition later that afternoon. The judicial proceedings were concluded at the moment the judge directed entry of judgment, a decision on the merits having then been rendered. *See Teacher's Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 66 (2d Cir.1986) (judgment entered on docket after automatic stay became effective nevertheless was final for *res judicata* purposes). The clerk's subsequent entry of the judgment, after the automatic stay became effective, therefore did not violate section 362(a)(1). *See Knightsbridge Dev. Co.*, 884 F.2d at 148 (section 362(a)(1) permits "rote post-petition activity" according to "plain sense" of statute).

The authorities relied upon by Bidermann as suggesting that entry of judgment violates the automatic stay are inapposite because the cases cited involve judicial decisions made after the filing of petitions in bankruptcy. Those cases do not implicate mere ministerial acts performed by the clerk following the completion of the judicial function. *See, e.g., Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372–73 (10th Cir.1990) (district court decision granting summary judgment two weeks after bankruptcy petition was filed held invalid); *Ellison v. Northwest Eng'g Co.*, 707 F.2d 1310, 1311 (11th Cir.1983) (automatic stay provision barred appellate court from rendering decision on case that had been briefed and argued prior to commencement of stay). Because the entry of a judgment on the court docket is not the continuation of a judicial proceeding within the meaning of section 362(a)(1), the judgment entered in this case was not entered in violation of the automatic stay and, accordingly, is valid.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.