Caroline S. WILSON, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES, INC., and Frank Urban, Defendants.

No. 03–CV–0029.

United States District Court, N.D. New York.

June 28, 2004.

Law Offices of Kevin F. Guyette (Kevin F. Guyette, Esq., of Counsel), Binghamton, NY, for Plaintiff.

Epstein Becker & Green, P.C., (John Houston Pope, Esq., Darryll A. Buford, Esq., Of Counsel), New York City, for Defendants.

### MEMORANDUM—DECISION and ORDER

MCAVOY, Senior District Judge.

## I. INTRODUCTION

Plaintiff Caroline Wilson commenced the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and N.Y. Executive Law § 296 ("Human Rights Law" or "HRL") alleging that Defendant International Business Machines ("IBM") terminated her employment on account of her gender and/or pregnancy. Presently before the Court are Defendants IBM and Frank Urban's motions for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## II. FACTS

IBM hired Plaintiff in 1984. In 1997, Plaintiff became the account manager within the Test Design Automation ("TDA") team of the Microelectronics Division. In this position, Plaintiff was responsible for selling a certain software product. From 1997 through July 2000, Plaintiff's first-line manager was Randy Kerr. From July 2000 through the end of Plaintiff employment, her first-line manager was Dennis Meehl. Kerr and Meehl reported to Urban.

In April 2000, Plaintiff informed Kerr that she was pregnant. In May or June 2000, Plaintiff sought permission to take a one-year leave of absence following the birth of her child. This request was granted. IBM hired Dean Rittenhouse to fill the vacancy created by Plaintiff's leave of absence. On August 11, 2000, Plaintiff went out on maternity leave. After exhausting her paid time off, Plaintiff commenced a year-long unpaid leave of absence.

In the Fall of 2001, IBM began plans for a reduction in force. The TDA team recommended certain personnel for layoff. The TDA team decided that, because there were two persons in the sales and marketing position (Plaintiff and Rittenhouse), one of the positions had to be eliminated. Plaintiff was selected for layoff. Rittenhouse was retained. According to Meehl, he recommended that Plaintiff be laid off because Rittenhouse had built relationships with customers and was closing deals, from which IBM needed revenue, and removing Rittenhouse at that time could jeopardize those deals that were in progress. Meehl made his recommendation on October 31, 2001. *See* Meehl Aff., Ex. D. The recommendation was reviewed by Dale Hoffman on November 14, 2001. *Id.*

On November 19, 2001, Plaintiff returned to work from her leave of absence. On November 28, 2001, Meehl notified

Plaintiff that she was to be laid off. Plaintiff inquired of Meehl why she, as opposed to Rittenhouse, was being laid off. Rittenhouse referred Plaintiff to Urban. Plaintiff then asked Urban why she was being laid off. Urban responded that "it was easier this way. [Rittenhouse] was working on some contracts. It was easier to keep him rolling along." Wilson Dep. at 49. During the course of the conversation with Urban, Urban briefly discussed breast feeding. *Id.* at 51–52. The conversation then turned to a discussion of mothers, unions and why IBM never built a facility in Pennsylvania. *Id.* Plaintiff was laid off effective January 3, 2002.

A few months after Plaintiff's termination, IBM underwent another set of layoffs. In June 2002, Rittenhouse was laid off effective August 5, 2002 because IBM eliminated the remaining sales and marketing position in TDA. In October 2002, IBM sold the entire TDA operation to Cadence Design Systems, Inc.

Plaintiff then commenced the instant action claiming that she was terminated on account of her gender and/or pregnancy. Currently before the Court are Defendants' motions to dismiss the Complaint in its entirety pursuant to FED. R. CIV. P. 56.

## III. STANDARD OF REVIEW

■ It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). With this standard in mind, the Court will address the pending motions.

## IV. DISCUSSION

The framework for review of Title VII discrimination claims is well-settled. To establish a claim of disparate treatment, Plaintiff must demonstrate that: (1) she is a member of the protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003). Under the familiar *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973), if Plaintiff establishes a prima facie case, there is a presumption of unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, non-discriminatory reason for its action. If the employer satisfies this burden, any presumptions of discrimination are erased and Plaintiff is left to submit sufficient evidence (which may include the evidence in support of the prima facie case) from which a fair-minded trier of fact could reasonably conclude that "the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry*, 336 F.3d at 138 (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir.1997)).

■ Here, there is no dispute that Plaintiff satisfies the first three elements of her prima facie case. There is dispute whether Plaintiff can demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination. Plaintiff contends that such circumstances exist because, among other things, Plaintiff was replaced by a male (Rittenhouse). The Second Circuit has held that being replaced by someone outside the protected class suffices to establish a prima facie case. *See Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001). Accordingly, Plaintiff has met her minimal burden of setting forth a prima facie case of gender discrimination.

The next inquiry is whether IBM has set forth a legitimate, non-discriminatory reason for its actions. IBM argues that they were operating in a tough economic market at the time and they wished to retain Rittenhouse, who had been in the job for one year so he could close deals that were in process and generate income for the business. IBM maintains that Rittenhouse was more familiar with the then-current customer base and feared that releasing Rittenhouse could jeopardize the work in progress. This explanation is a legitimate, non-discriminatory business concern.

■ Because IBM has met its burden of setting forth a legitimate, non-discriminatory reason, all inferences of discrimination drop from the case and the burden returns to Plaintiff to prove discrimination vel non. Plaintiff may prove her case by providing evidence of discrimination and/or by proving that IBM's proffered legitimate, non-discriminatory reason for terminating Plaintiff was a pretext for unlawful discrimination. In support of her claim, Plaintiff argues that Rittenhouse was less qualified for the position than she, Rittenhouse did not perform as well on the job as she did, IBM terminated another female who recently gave birth, and, upon her return from the leave of absence, Urban allegedly discussed the topics of breast feeding and whether her husband was employed. IBM counters that Rittenhouse performed satisfactorily during a particularly tough sales market; the other female as well as numerous other males were laid off as part of the reduction in force; and Urban's comments are irrelevant because he made them after the decision was made to terminate Plaintiff, Urban was not the final decision maker, and they do not evince a discriminatory intent.

■ The Court finds that Plaintiff has proffered insufficient evidence from which a fair-minded trier of fact could reasonably conclude that she was terminated on account of her gender or pregnancy. Plaintiff fails to present sufficient evidence supporting the conclusion that IBM's legitimate, non-discriminatory reason is a pretext for unlawful discrimination. Although Plaintiff disagrees with IBM's assessment of the situation and of Rittenhouse's performance, Plaintiff fails

to submit any evidence tending to suggest that IBM did not honestly believe that the decision to keep Rittenhouse instead of Plaintiff would, from a business standpoint, be for the good of the company. Plaintiff submits no evidence that Rittenhouse was not more familiar with the then-current customers, that he did not perform adequately under the circumstances, that he was not in the middle of closing certain deals, or that IBM did not believe that removing him would jeopardize those deals. Having failed to demonstrate that IBM's proffered legitimate, non-discriminatory reason was not a pretext for unlawful discrimination, the question remains whether there is sufficient other evidence from which the trier of fact could reasonably conclude that Plaintiff was discriminated against on account of her gender or pregnancy.

For the following reasons, Plaintiff has failed to meet her burden. First, there is no dispute that IBM was going through tough times and laid off numerous employees. Wilson Dep. at 46. It is further undisputed that IBM determined to eliminate one of the two sales and marketing positions in the Microelectronics Division. Stmnt. of Mat. Facts at ¶ 19. "[A] reduction-in-force or restructuring that results in an elimination of jobs often is a legitimate reason for dismissing an employee." *Tarshis v. Riese*, 211 F.3d 30, 37 (2d Cir. 2000).

Second, Plaintiff's contention that another female employee who recently gave birth was also laid off is of little to no evidentiary value. The Second Circuit has "previously cautioned against attributing much if any significance to the fact that another member of the protected class was discharged along with the plaintiff ... especially where the numbers involved are small." *Zimmermann*, 251 F.3d at 382 (internal citations omitted). In any event,

the evidence in the record is that the other female as well as her male co-worker were laid off because it was determined that their project management responsibilities could be reassigned to others. Moreover, the statistics concerning the layoff from the TDA team cut against Plaintiff's claim. Ten employees were laid off in November 2001—six males and four females.

Third, Plaintiff's attack on Rittenhouse's qualifications do not further her case of discrimination. Plaintiff's disagreement with IBM's evaluation of Rittenhouse's qualifications does not raise a triable issue of fact. Plaintiff does not offer any evidence that Rittenhouse was unqualified for the position. Rather, she simply maintains that she performed better than Rittenhouse. Plaintiff is unable to quantify any appreciable difference in their qualifications. Even assuming Plaintiff to have been more qualified, her argument fails to take into account those factors that may have been important to Defendant in making its decisions. For example, it may have been more important for IBM to have Rittenhouse close deals that he started, even though he may not have performed overall as well as Plaintiff. For reasons previously discussed, Plaintiff has failed to point to any evidence suggesting that IBM's claimed management concerns in this regard were pretextual. This Court's function is not to armchair quarterback business decisions, but to review the record and determine whether there is sufficient evidence to permit the trier of fact to reasonably conclude that Plaintiff was the victim of unlawful discrimination. In this case, there is no evidence of any appreciable difference between the qualifications and/or success of Plaintiff and Rittenhouse, and nothing about their relative qualifications is indicative of unlawful discrimination.

Fourth, the mere fact that Rittenhouse, a male, was retained while Plaintiff, a female, was not, is insufficient to substantiate Plaintiff's discrimination claim. This is particularly so when considering the totality of the circumstances, including market conditions and the fact that Rittenhouse had been performing in the job for a year, whereas Plaintiff had been off of the job for over a year.

Fifth, the comments attributed to Urban are not indicative of gender or pregnancy-based discrimination. According to Plaintiff, she was inquiring why she was being let go and "at some point the conversation switched to breast-feeding. And I remember being quite embarrassed as he told me about his wife breast-feeding for three years with his first baby. It wasn't a conversation I was comfortable in and so I remember quickly saying, I'm not breast-feeding anymore. Like maybe he'll change his . . . mind." Wilson Dep. at 51–52. The conversation changed topics shortly thereafter to a discussion of mothers, unions, and why IBM never operated out of Pennsylvania. Nothing about this alleged conversation suggests that Urban did not want Plaintiff to remain on the job because of her gender and/or pregnancy. This conversation does not evince any negative attitude towards women or pregnancy. There are no allegations that Urban made any derogatory comments about breast feeding or otherwise made any connection between Plaintiff's job and breast feeding. To the contrary, this appears to be an innocuous conversation about child rearing. Absent something more, casual, cordial discussions about raising children (including breast feeding) do not evidence unlawful discrimination.

Sixth, even assuming Urban made these comments and that such comments evidenced animosity by him towards females and/or women who have recently given birth, the evidence in the record is that Urban was not responsible for making the decision to lay off Plaintiff. The undisputed evidence in the record is that Meehl made the initial determination as to who should be laid off. Urban agreed with the recommendation. The final decision was made by Dale Hoffman. This determination was made before Urban's comments. There is no evidence that Urban infected Meehl's or Hoffman's decision to terminate Plaintiff with any discriminatory motive he may have harbored.

In sum, without some *indicia* that IBM treated Plaintiff differently because she was pregnant or because she was female, there can be no inference of unlawful discrimination. *Plaintiff has failed to point to sufficient evidence from which a fair-minded trier of fact could reasonably conclude that she was discriminated against on account of her gender and/or pregnancy.*

Having found that there is insufficient evidence to support a claim of discrimination against Defendant IBM, Plaintiff's HRL claim must similarly fail as against Defendant Urban.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.