WM. R. MOORE DRY GOODS COMPANY *v.* MULLINIX.

Opinion delivered January 14, 1924.

1.  BANKRUPTCY—REPLEVIN BY TRUSTEE—EVIDENCE.—In replevin against the trustee of a bankrupt to recover goods sold to the bankrupt on the ground that the bankrupt's purchase was upon fraudulent representations and with intent to defraud, evidence *held* to sustain verdict for the trustee.

2.  BANKRUPTCY—SUIT AGAINST BANKRUPT—DUTY OF TRUSTEE.—A trustee in bankruptcy may exercise his own judgment with reference to defending a suit pending against the bankrupt at the time of the bankruptcy proceedings, and it is not necessarily his duty in such matters to follow the wishes of a majority in number and amount of his creditors.

3.  BANKRUPTCY—PENDING REPLEVIN SUIT—EFFECT OF DISCHARGE.—Where a replevin action was pending against a merchant who became bankrupt, and he had given retention bond before his bankruptcy, *held* that the court in the replevin action properly overruled plaintiff's motion for judgment against the bankrupt and his sureties on the retention bond in the action of replevin; it appearing that the defendant had received his discharge.

4.  BANKRUPTCY—EFFECT ON PENDING ACTION.—After the intervention of the trustee in bankruptcy in a pending action, it was not incumbent on the bankrupt to answer the complaint, and no judgment by default could be taken against him for failure to answer.

5.  APPEAL AND ERROR—INSTRUCTION—SPECIFIC OBJECTION.—Objection to the form of language used in an instruction should be specific.

Appeal from Clay Circuit Court, Western District; *W. W. Bandy*, Judge; affirmed.

*F. G. Taylor* and *Oliver & Oliver*, for appellant.

The trustee was not a proper party to the suit, and, although judgment was in his favor, this does not affect the suit as to the bankrupt, who failed to plead in the case.  The trustee is vested only with the title the bankrupt had.  Bankruptcy Acts, 1898, § 72-a.  He can only sell such title as he has, which he does not warrant. *Johnson* v. *Baum*, 158 Ark. 441.  The rule of *caveat emptor* applies to purchasers at sales by trustees in bankruptcy. 32 Ark. 97; 32 Ark. 32; 73 Ark. 37.

*C. T. Bloodworth*, for appellee.

A trustee in bankruptcy can make any defense which the bankrupt could have made.  Collier on Bankruptcy, 11th ed., pgs. 302-303.  Specific objection should have been made by appellant to the instructions about which he complains, and, not having done so, he cannot do so now.

WOOD, J.  The William R. Moore Dry Goods Company (hereafter called company) is a corporation of Tennessee engaged in the wholesale dry goods business. It sold to one W. R. Wyse of Peach Orchard, Arkansas, a large amount of merchandise during the fall of 1919. In May previous Wyse made a statement of his financial condition to R. G. Dun & Co., purporting to reflect the condition of his finances as of January 1, 1919.  This statement showed that Wyse had total available assets at that time of $14,715, and he enumerated the various items that constituted the total amount of his assets as stated.  Among the items was the following: "Cash on hand and in bank, $4,000."  The total liabilities were given as $2,250.  The statement was made on one of the forms furnished by R. G. Dun & Co., and per its request for a report.  The statement contained answers to the questions requested by R. G. Dun & Co., purporting to

give all his personal property and his real estate and the annual amount of his business done, and the names of a few houses from whom he made the largest purchases, and purporting to be a complete statement of his financial condition at that time.

The company instituted this action against Wyse on April 21, 1920, and alleged that it had sold dry goods to Wyse, part of which had been sold by him, and that he had the balance of the goods so sold him on hand, of the value of $800, of which the company alleged it was entitled to the immediate possession; that the possession of these goods had been wrongfully obtained by Wyse, and they were wrongfully detained by him from the company. The complaint contained the necessary allegations in the ordinary suit for replevin. A writ of replevin was issued, describing the goods mentioned in the invoices, which were attached as exhibits to the complaint. The sheriff served the writ on the 22d of April, 1920, and Wyse executed a bond for the retention of the property. Wyse filed a general demurrer to the complaint on November 2, 1922. The record does not show that this demurrer was ever acted upon, and it does not appear that Wyse afterwards filed an answer in the cause. On November 2, 1922, F. C. Mullinix, trustee in bankruptcy, filed a pleading designated as a motion and answer, in which he set up that in May, 1920, Wyse had been duly adjudged bankrupt, and that Mullinix had been duly appointed, and had qualified and acted, as trustee in bankruptcy of Wyse's estate; that the title to the property in controversy vested in Mullinix as the trustee, and that he was the real party in interest. He admitted that the company had sold Wyse the goods described in the invoices attached to the complaint, and alleged that these goods were sold on open account to Wyse, and that the title passed and vested in him under the sale, and that the company had no right, title or interest whatever in the same. He denied all the other material allegations of the complaint.

It was agreed by the parties that Wyse was adjudged a bankrupt in the United States Court for the Jonesboro Division, Eastern District of Arkansas, on April 27, 1920; that he was discharged in bankruptcy by such court in July, 1920; that Mullinix was the trustee, and, as such, he and his successors took possession of the goods in controversy and other property of the bankrupt, and made a sale of the same, and had duly accounted to the bankrupt court for the proceeds thereof, and that Wyse was the purchaser at the bankrupt sale. It was admitted that the price of the goods in controversy was $425.

V. G. Lane testified that he was the credit man of the company in the fall of 1919, when the company received orders from Wyse for merchandise. It had received the financial statement of Wyse made to R. G. Dun & Co., January 1, 1919, and based the credit extended to Wyse on that statement, which was in substance as above referred to. If the statement was false, then the company was defrauded. Witness was unable to state any account that Wyse owed in January, 1919, that he had not paid. Witness did not know whether the list of debts as given in the statement was correct or not. The financial statement was not correct, because the cashier testified that Wyse only had $1,000 in cash when Wyse, in the statement, showed that he had $4,000 in cash. The witness stated that he was acquainted with the condition of the country generally in northeastern Arkansas in 1919, and that those conditions were the best he had ever known, and that general prosperity prevailed until July, 1920.

Wyse was called as a witness for the company, and testified to the effect that he filed the petition in bankruptcy in the year 1920. He had made a report to the United States Government of his income for the year 1919, and had paid that year about $80 as income tax. He had his attorney to write his creditors in the spring of 1920 in an effort to settle with them on a percentage

basis. He didn't write the letters himself, but saw them, and when his creditors talked with him about it he did not tell them that any of the statements in the letters were untrue. The letters contained, among others, the following statement: "Mr. Wyse of Peach Orchard, Arkansas, finds himself in the unfortunate position of having sold his goods on a credit to unreliable persons, trusting to their honesty for his pay, until he has nothing but trust left." That statement was not wholly true. Witness had several accounts he considered good, but, under the conditions, he could not get the money. The letter continues: "He has several thousand dollars in accounts which are not worth ten cents on the dollar." That also was not true. Witness would not have listed them that way. The letter further says: "His liabilities to various creditors totals up close to $15,000." Witness stated that he did not owe quite that much. Witness made the financial statement to Dun & Company mentioned above on May 12, 1919, showing his financial condition as of January 1, 1919. Witness further stated that he did not have his money buried out anywhere. He never kept large sums of money anywhere except at the bank. During 1918, 1919 and 1920 he did not do business with any other bank than the People's Bank of Peach Orchard. In the spring of 1920 witness found himself with a heavy stock of goods on hand, a great deal of which was winter goods, and heavy bills coming due, which he could not meet. He wrote his creditors and offered for them to come and take over his stock and dispose of it and pay his debts. Witness collected and paid on his accounts just as long as he had anything to pay with. The salesman of the company sold witness the goods in controversy at witness' store. He insisted that witness take as much stock as witness would. A lot of the merchandise lost forty or fifty per cent. of the price that obtained in the spring of 1920. Witness did not want to go into bankruptcy, and offered his creditors everything he had, and invited them to examine his stock, his

accounts and his books. If there was any false statement in the report he made to R. G. Dun & Co., he was not aware of it. Evidently he had the amount of money on hand or in the bank at the time he made the report, for he knows that he never made a false statement. When witness made the statement, he knew that people were going to rely on it. Witness supposed that he went to the bank to see how much cash he had, or else he checked up with his deposit book.

B. F. Lewis testified that he was cashier of the People's Bank of Peach Orchard, and was in active charge of the bank. He exhibited the ledger sheets showing the bank account of Wyse January 1, 1919. On December 31, 1918, Wyse's account showed a balance of $1,064.38. On January 2, 1919, it showed a balance of $1,317.17. The largest amount Wyse had to his credit at any time during December, 1918, was $1,697.17, and the largest amount he had to his credit during the year 1919 was on January 30, when it amounted to $1,516.49. It was $1,106.12 in May of that year, and from January to May of that year it never did amount to as much as $4,000. It ran all the way from an overdraft to $1,610 on December 11, 1920. Witness was acquainted in a general way with Wyse's stock. Witness would have estimated that his available assets in May, 1919, at the time he made his report to R. G. Dun & Co., would have been more than he reported. Witness considered that his assets about the first of that year would have amounted to something in the neighborhood of $15,000.

Bloodworth, the attorney for Wyse, testified that, in writing to Wyse's creditors, he made a statement of Wyse's financial embarrassment as his own estimate from an examination of his stock. It looked as though Wyse had articles on hand that had been on hand for years, together with a whole lot of good fresh stock. While Wyse authorized witness to write the letter, the specific statements made in it witness doesn't suppose that Wyse saw until some time afterward, and witness

made them on information that Wyse furnished witness about what his liabilities were.

There was introduced in evidence a restraining order by the referee in bankruptcy, addressed to G. B. Oliver and Oliver & Oliver, which recited: "You are hereby restrained from taking a judgment in the circuit court of the Western District of Clay County, Arkansas, in behalf of Wm. R. Moore Dry Goods Company *v.* W. R. Wyse, bankrupt, which suit in replevin you instituted within four months prior to the filing of the petition in involuntary bankruptcy by above W. R. Wyse." This order was dated November 3, 1920.

There is also in the record a petition by Oliver & Oliver, attorneys for the company, in which they set up that the action was instituted on the 21st day of April, 1920; that a writ of replevin was issued and served by taking certain property from Wyse; that a retaining bond was executed by Wyse, and he retained possession of the property, and that the cause was still pending; that the clerk had dropped the cause from the docket, over the protest of the plaintiff, and praying that the cause be reinstated on the docket. This petition was filed on the 4th of April, 1922.

The court, over the general objection of the company, gave, on its own motion, among others, instructions Nos. 1 and 5. Instruction No. 1 defined the issues between the trustee in bankruptcy and the company, and, in effect, told the jury that the interpleader contended that, after this suit was commenced, Wyse went into bankruptcy and his property was turned over to Mullinix, as trustee in bankruptcy, and all title that Wyse might have had in the property turned over to the trustee passed to the trustee; that the trustee came into the suit as an interpleader, contending that Wyse was the actual owner of the property at the time the writ of replevin was sued out, and that, because of the fact that he went into bankruptcy, Mullinix was appointed trustee, and the title vested in him, and for that reason the title to the goods

ARK.]    WM. R. MOORE D. G. CO. v. MULLINIX.    133

at the present time was in the trustee, because the same were turned over to him as such; that these were the issues for the jury to decide.

In instruction No. 5 the court told the jury that they were called upon to pass upon the question of whether or not there was a fraudulent representation, and that, in reaching a conclusion on this proposition, they should take into consideration all the facts and circumstances in proof, after giving the testimony of the witnesses and the circumstances such weight as they thought same were entitled to; that the burden of proof was on the interpleader, and that the court supposed he had the opening. The court also instructed the jury that; if they found that the title to the goods in controversy was in the company, they would return a verdict in its favor; and also to the effect that, if Wyse made false and fraudulent statements of his assets and liabilities, and that the company had access to this statement and relied on it in making its sale to Wyse, then title to the property remained in the company and never vested in Wyse at all. But, on the other hand, if the statement was not fraudulent, but substantially correct, then the verdict should be in favor of the interpleader, Mullinix.

The jury returned a verdict in favor of the interpleader, Mullinix. The company thereupon moved for judgment against Wyse and the sureties on his bond. The court overruled its motion, to which the company excepted. The court then rendered judgment against the company for costs and dismissing its action, from which judgment is this appeal.

1. The appellant's first contention is that, conceding that the appellee, Mullinix, the trustee in bankruptcy, was a proper party to the suit, the verdict nevertheless was contrary to the evidence. The evidence is fully set forth above. It could serve no useful purpose to argue the issue. Our conclusion is that the issue as to whether or not appellee Wyse purchased the goods from the appellant upon fraudulent representations and with

intent to defraud the appellant was purely one of fact. The evidence was sufficient to sustain the verdict.

2. The issue as to whether or not appellee Wyse perpetrated a fraud upon the appellant in the purchase of the goods was submitted to the jury in instructions as favorable to the appellant as it was entitled to ask. *In re Morendo County Mercantile Co.,* D. C. Ala. 29 Amer. B. R. 46, 199 Fed. 447. The verdict of the jury, as we have seen, on that issue had substantial evidence to sustain it, and is therefore conclusive here. It having been determined by the jury, on this issue of fraud, that the purchase of the goods in controversy from the appellant was not fraudulent, and that the title to same was in Wyse at the time his assets were taken over by the trustee in bankruptcy, it follows that the appellee, Mullinix, as trustee in bankruptcy, also had title to the property. In other words, the trustee in bankruptcy was vested with such title in the property as the bankrupt had. National Bankruptcy Act, 1898, § 70. The court therefore correctly instructed the jury that, if they found there was no fraud in the purchase, and that the title to the property passed to Wyse, the bankrupt, they would return a verdict in favor of the appellee, Mullinix. The law is well settled that the trustee could exercise his own judgment with reference to defending a suit against the bankrupt at the time of the bankruptcy proceeding, and it is not necessarily his duty in such matters to follow the wishes of a majority in number and amount of the creditors. I Collier on Bankruptcy, p. 420, note 115. It may be said in this connection that the record does not show that the appellant objected to the trustee becoming a party to the action. Having become such party, it was his province and duty to "plead to the jurisdiction or make any defense which the bankrupt could have made, or even any defense which any creditor could have asserted affirmatively. Once the trustee is a party to such suit, he is bound by the judgment therein." I Collier on Bankruptcy, 13th ed., p. 421, note 121, 122, 123.

The crux of this lawsuit was the issue of fraud, which issue, as we have seen, was submitted under correct instructions and determined by the jury against the appellant, upon legally sufficient evidence.

3. On the issues raised by the intervention of the trustee and the answer to appellant's complaint, the court correctly directed the jury that, if they found that there was no fraud on the part of Wyse in the purchase of the goods in controversy, the verdict should be in favor of Mullinix, the trustee. The agreed statement of facts showed that Wyse had been adjudged a bankrupt and had received his discharge. Therefore the court properly overruled appellant's motion for a judgment in favor of appellant against Wyse and his sureties on the retention bond in the action of replevin. After the intervention of the trustee in bankruptcy it was not incumbent upon the appellee Wyse to answer appellant's complaint, and no judgment by default could be taken against him for failing to answer.

4. We find no prejudicial error to appellant in the ruling of the court in giving instruction No. 5. The concluding paragraph of this instruction is as follows: "The burden of proof is on the interpleader, and he has the opening, I suppose." Instruction No. 5 embraced two paragraphs, and certainly no objection could be raised to the first. That part of the language of the second paragraph which places the burden of proof upon the interpleader certainly was not prejudicial to the appellant, and if learned counsel conceived that appellant was prejudiced by the language, which told the jury that "the interpleader has the opening, I suppose," they should have drawn the attention of the trial court to this language by a specific objection. A general objection was not sufficient for that purpose.

The judgment is in all things correct, and it is therefore affirmed.