### In re CAPGRO LEASING ASSOCIATES, Debtor.

**Bankruptcy No. 888–81336–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

June 30, 1994.

Robert S. Powers, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Louis A. Scarcella, Phillips, Nizer, Benjamin, Krim & Ballon, Garden City, NY, Special Counsel for debtor.

Ira L. Hyams, Ira L. Hyams, P.C., Jericho, NY, for F.D.I.C.

Stan Y. Yang, Office of the U.S. Trustee, Garden City, NY.

Snitow & Pauley, Debtor's Appellate Counsel, New York City.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court [1] is a motion ("Motion") by Debtor for an order expunging the claim of a creditor, the Federal Deposit Insurance Corporation ("FDIC"). Debtor's Motion was made pursuant to section 502 of title 11, United States Code ("Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[2]

The issues raised by Debtor's Motion are the status of a judgment against a debtor signed and entered post-petition by the clerk of a state court, and of the debtor's post-petition appeal from the state court proceeding—without any party involved having first sought relief from the automatic stay.[3]

### RELEVANT FACTS

Debtor, Capgro Leasing Associates, is a limited partnership that was created in 1982.

---

1. The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (B), and (O) of title 28.

2. "A claim or interest, proof of which is filed ... is deemed allowed, unless a party in interest ... objects.... [If] such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount...." 11 U.S.C. § 502(a), (b) (1994). Bankruptcy Rule 3007 provides the procedural requisites for objecting to claims. Fed.R.Bankr.P. 3007 (1994) ("An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed to the claimant ... at least 30 days prior to the hearing.").

3. The automatic stay, which prevents numerous acts, arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a) (1994). Section 362(a) and the automatic stay are discussed *infra* in the Legal Discussion.

Debtor's general partner is a corporation, M.N. Capgro Corp. ("Capgro"), whose president is Richard Caplan ("Caplan"). Caplan's business with Debtor and other partnerships and corporations involved buying, selling and leasing automobiles. One such other corporation was Roadworks Industries, Inc. ("Roadworks"), of which Caplan was an officer and shareholder. Roadworks operated its business in part through two demand deposit checking accounts with First Inter-County Bank of New York (the "Bank"). Each checking account was backed by an unlimited line of credit. By virtue of an unlimited guaranty, Caplan was personally liable for any credit extended through these accounts. Caplan also executed another document, an unlimited guaranty by Debtor of all Roadworks' debts to the Bank, which Caplan signed as Debtor's general partner, although Caplan was never in fact a general partner of Debtor. (As stated, the corporation of which Caplan was president, Capgro, was Debtor's general partner.)

By complaint dated February 16, 1988, the Bank commenced an action against Debtor, Roadworks, Caplan, and Capgro, among others, in New York State Supreme Court, New York County ("State Court Action"). Pursuant to the State Court Action, the Bank sought, in addition to various other relief, reimbursement for overdrafts upon the checking accounts by Roadworks and to realize upon the guaranties of Roadworks' debts by Caplan and Debtor. Debtor maintains in papers before this Court that the unlimited guaranty signed by Caplan was never an enforceable guaranty by Debtor of Roadworks' debts. Debtor argues that the guaranty instrument signed by Caplan was unauthorized, improper and ineffective because Caplan was not a general partner of Debtor and, in any event, Debtor's partnership agreement did not provide authority to *any* partners to execute unlimited guaranties. Debtor notes that these defenses were not raised by its counsel either in papers or in argument before Justice Herman Cahn, who presided over the State Court Action. Debtor also denigrates its counsel for engaging in an apparent conflict by representing Debtor, Roadworks, Caplan, Capgro and other defendants in the State Court Action. Debtor

alleges that its own interests were "clearly adverse to Richard Caplan who was also individually liable for the amount of the overdrafts and who acted without authorization on behalf of the Debtor in executing the Unlimited Guaranty [of Roadworks' debts], the alleged basis for the Debtor's liability." (Debtor's Memorandum of Law at 4; Debtor's Application at 6.) As of the time Debtor filed the Motion at bar, it had pending an action for malpractice against its counsel in the State Court Action.

After commencement of the State Court Action, the Bank was declared insolvent and FDIC was appointed receiver. FDIC then moved to be substituted for the Bank and for summary judgment. By order dated November 30, 1988, Justice Cahn of New York County Supreme Court allowed the substitution, granted FDIC's motion for summary judgment, and gave direction to the Clerk of the Court to enter judgment against Debtor, Roadworks, Capgro, Caplan and others for $3,862,189.63 plus interest, costs and disbursements ("Justice Cahn's Order", or "Order").

On December 9, 1988, at 1:28 p.m., Debtor filed a petition for bankruptcy relief under chapter 11 of the Bankruptcy Code. On the same date, Justice Cahn's Order was filed and entered, although the exact time that the New York County Supreme Court Clerk performed these actions has neither been alleged nor established by the parties herein. It therefore is not determinable whether the Justice Cahn's Order was filed and entered upon the New York County Supreme Court's docket pre- or post-petition.

The following events then occurred *post-petition.*

On December 12, 1988, in furtherance with the direction contained in Justice Cahn's Order, the Clerk of New York County Supreme Court signed a judgment providing for a total recovery of $3,965,099.51 by FDIC against Debtor, Roadworks and Caplan, among others ("Judgment"). Then, also in compliance with Justice Cahn's Order, the Judgment was entered by the Clerk on the State Court's docket on December 22, 1988.

Debtor, Caplan, and other defendants in the State Court Action then appealed from Justice Cahn's Order to the Appellate Division of the Supreme Court in and for the First Judicial Department. On motion of FDIC, as appellee, Debtor's appeal was dismissed by the Appellate Division by order dated April 5, 1990.

## DEBTOR'S MOTION

Two years later, on April 6, 1992, Debtor filed the within Motion. Debtor seeks an order vacating the Judgment and expunging the claim[4] filed by FDIC or, alternatively, reducing FDIC's claim by $1,474,922.70, and for such other and further relief as is just and proper.

Debtor's legal arguments in support of the relief requested are: (i) Debtor's own appeal was a violation of the automatic stay and must be declared void and of null effect; (ii) post-petition signing and entry of the Judgment constituted a violation of the automatic stay, rendering signature and entry of null and void effect; and (iii) since the Judgment was signed and entered post-petition, the Judgment itself is null and void, and therefore the decision of New York County Supreme Court is not final and need not be given preclusive effect, allowing Debtor to object to FDIC's claim and argue the merits of the dispute anew in this Court. (Debtor's Memorandum of Law at 5, 7–8.)

As to the merits of the dispute, FDIC's claim is based upon the Judgment. Debtor contends that the Judgment was rendered against Roadworks for the unsatisfied debts incurred by Roadworks when it accessed the credit lines which backed all overdrafts upon its checking accounts held with the Bank. Debtor claims that the Judgment was rendered against it pursuant to Debtor's guaranty of Roadworks' debts. Debtor insists, however, that the Judgment is incorrect in this aspect. The instrument which purportedly is a guaranty of Roadworks' debts by Debtor, was unauthorized and ineffective. It was signed by Caplan as Debtor's general partner, but Caplan was never a general partner. In fact, Debtor alleges, no partner had authority, apparent or otherwise, to execute a

guaranty by Debtor of another entity's debts. Debtor hopes to avoid the res judicata and collateral estoppel bar to relitigation of the merits of Debtor's dispute with FDIC's claim by having this Court declare the State Court Order and Judgment void and of null effect. Then, within the context of a hearing upon Debtor's objection to FDIC's claim, Debtor hopes to establish that it has no liability (or somewhat less liability) because Caplan's purported guaranty by Debtor of Roadworks' debts was in fact unauthorized, and not binding.

## LEGAL DISCUSSION

The queries before the Court are the status of the Judgment against Debtor signed and entered post-petition, and the validity of Debtor's post-petition appeal therefrom, all of which transpired in the absence of an order granting relief from the automatic stay.

Debtor contends that upon the filing of a bankruptcy petition, all judicial proceedings are stayed pursuant to section 362(a)(1) of the Bankruptcy Code. Debtor specifically argues that its petition stayed the State Court Action and the activity of the Clerk of the State Court, the Appellate Division of New York County Supreme Court, and of all parties involved in the State Court proceedings. Debtor insists that signing and entering the Judgment and *Debtor's own appeal* are all of null and void effect for having been procured in violation of the automatic stay. (Debtor's Memorandum of Law at 6.) Relief from the stay, Debtor proffers, should have been obtained from this Court before the State Court Clerk could sign and enter the Judgment and before continuation of the State Court Action pursuant to Debtor's own appeal.

### A. The Filing of a Bankruptcy Petition Operates as a Stay

We begin with the relevant Code section that occasions the automatic stay, and which provides:

> [A bankruptcy petition] ... operates as a stay, applicable to all entities, of ... the

4. The statutory predicates for an objection to a

claim are set forth *supra* at note 1.

commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(1) (1994).

■ Pursuant to section 362, the stay created by the filing of a bankruptcy petition is automatic and immediate. *Id.; Balaber–Strauss v. Reichard (In re Tampa Chain Co.),* 835 F.2d 54, 55 (2d Cir.1987); *Commerzanstalt v. Telewide Sys., Inc.,* 790 F.2d 206, 207 (2d Cir.1986) ("The stay is automatic and mandatory with the filing of the petition....") (citing *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983); *Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1204 (3d Cir.1992); *In re Vitreous Steel Prod. Co.,* 911 F.2d 1223, 1231 (7th Cir.1990). The automatic stay provides debtors a breathing spell from creditors by preventing "all collection efforts, all harassment, and all foreclosure actions." *Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1204 (3d Cir.1991) (citing *Association of St. Croix Cond. Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982)); *e.g., Farley v. Henson,* 2 F.3d 273, 274 (8th Cir.1993); *Ellison v. Northwest Engin. Co.,* 707 F.2d 1310, 1311 (11th Cir.1983).

■ The stay protects creditors, too, by precluding certain "creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Maritime,* 959 F.2d at 1204 (citing *Croix,* 682 F.2d at 448); *e.g., Commerzanstalt,* 790 F.2d at 207 (citing *Croix,* 682 F.2d at 448); Sen.Rep. No. 989, 95th Cong.,

2d Sess. 49–50 (1978), H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–41 (1977)[5], 1978 U.S.Code Cong. & Admin.News at pp. 5835, 6296, *reprinted in* Norton Bankr. Law and Prac. 2d 218–21 (1993–94 ed.). Because the stay is not solely for the debtor's protection, a debtor may neither unilaterally waive nor limit the scope of the automatic stay. *Commerzanstalt v. Telewide Sys., Inc.,* 790 F.2d 206, 207 (2d Cir.1986) (citing *Association of St. Croix Cond. Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982)); *Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1204 (3d Cir.1991).

## B. The Stay Prevents a Debtor's Appeal in Certain Cases

■ Eight of the twelve circuit courts of appeals have held that the automatic stay prevents a debtor from appealing the decision of a non-bankruptcy forum, where that action was originally commenced against the debtor. *Barbier v. Shearson Lehman Hutton, Inc.,* 943 F.2d 249, 250 (2d Cir.1991); *Borman v. Raymark Indus., Inc.,* 946 F.2d 1031, 1036 (3d Cir.1991); *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Invest. Corp.,* 797 F.2d 227, 230 n. 4 (5th Cir.1986); *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983); *Sheldon v. Munford, Inc.,* 902 F.2d 7, 9 (7th Cir.1990); *Farley v. Henson,* 2 F.3d 273, 274 (8th Cir.1993); *Delpit v. Commissioner,* 18 F.3d 768, 770 (9th Cir.1994); *Ellison v. Northwest Engin. Co.,* 707 F.2d 1310, 1311 (11th Cir.1983). *See also Balaber–Strauss v. Reichard (In re Tampa Chain Co.),* 835 F.2d 54, 55 (2d Cir. 1987); *Teachers Ins. and Annuity Assoc. v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); *Commerzanstalt v. Telewide Sys., Inc.,* 790 F.2d 206, 207 (2d Cir.1986).

The rationale is that a debtor's own appeal is "indisputably a continuation of a judicial

---

**5.** Provisions of the House and Senate Reports state:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws....

*The automatic stay also provides creditor protection.* Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.

Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. Sen.Rep. No. 989, 95th Cong., 2d Sess. 49–50 (1978), H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–41 (1977), 1978 U.S.Code Cong. & Admin.News 5787, 5835, 5963, 6296 (emphasis ours), *reprinted in* Norton Bankr. Law and Prac.2d 218–21 (1993–94 ed.).

action or proceeding ... and therefore ... is automatically stayed if it is one 'against the debtor.'" *Commerzanstalt,* 790 F.2d at 207 (citing *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983)); *Farley v. Henson,* 2 F.3d 273, 274–75 (8th Cir.1993) ("At least six federal circuits ... have held that an appeal by a debtor in a case in which the debtor originally was the defendant is a 'continuation' of a 'proceeding against the debtor' and thus is subject to the automatic stay.... We believe that these decisions are correct and join our sister circuits....") (quoting *Ingersoll–Rand Fin. Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1426 (9th Cir. 1987)) (citing *Butler,* 803 F.2d at 65; *Marcus,* 797 F.2d at 230 n. 4; *Cathey,* 711 F.2d at 62; *St. Croix,* 682 F.2d at 448; *Sheldon,* 902 F.2d at 9). An action is "against the debtor" if it was initiated against the debtor. *Barbier v. Shearson Lehman Hutton, Inc.,* 943 F.2d 249, 251 (2d Cir.1991); *Commerzanstalt,* 790 F.2d at 207 (citing *Cathey,* 711 F.2d at 61–63 (with discussion)); *St. Croix,* 682 F.2d at 449; *Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); *Keene Corp. v. Acstar Ins. Co.,* 162 B.R. 935, 941–42 (Bankr.S.D.N.Y.1994).

Where the action was initiated against the debtor, no party to the action may appeal absent relief from the automatic stay. Because no entity, including a debtor, may limit or waive the stay, nor appeal during the stay's pendency, the only option is to obtain relief from the stay, and this may only be sought from the bankruptcy judge. *Barbier v. Shearson Lehman Hutton, Inc.,* 943 F.2d 249, 250 (2d Cir.1991) (citing 11 U.S.C. § 362(d), (f)); *Cathey,* 711 F.2d at 62–63; *Ellison v. Northwest Engin. Co.,* 707 F.2d 1310, 1311 (11th Cir.1983); *In re Holtkamp,* 669 F.2d 505, 507 (7th Cir.1982).

We did locate, however, three opinions and a commentator which state that a debtor does not violate the automatic stay when it appeals post-petition from a decision of a non-bankruptcy forum rendered against it pre-petition. *Chaussee v. Lyngholm (In re Lyngholm),* 24 F.3d 89, 91–93 (10th Cir.

1994)[6]; *Autoskill Inc. v. National Educ. Support Sys., Inc.,* 994 F.2d 1476, 1486 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993); *Townview Nursing Home v. New York (In re Townview Nursing Home),* 28 B.R. 431, 447 (Bankr.S.D.N.Y.1983); 8 COLLIER ON BANKRUPTCY ¶ 6009.03 at 6009–3 n. 7 (Lawrence P. King et al. eds., 15th ed. 1993). These sources rely upon Bankruptcy Rule 6009 for their results, but we believe such reliance is misplaced.

Bankruptcy Rule 6009 provides in full:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Fed.R.Bankr.P. 6009 (1994). In *Autoskill,* the Tenth Circuit addressed a debtor's post-petition appeal of a non-bankruptcy decision, and, quoting the Collier treatise, found that Bankruptcy Rule 6009 allows such appeal without lifting the stay:

> 'Rule 6009, along with Code section 362 itself, makes it clear that the automatic stay does not apply to the continued prosecution of actions by the trustee or debtor in possession. Those entities may continue or pursue litigation without leave of court (or release of stay under section 362).' ... Rule 6009 enabled [the debtor] to prosecute this appeal without the authorization of the bankruptcy court and the notice of appeal was not a void act.

*Autoskill,* 994 F.2d at 1486 (quoting 8 COLLIER ON BANKRUPTCY ¶ 6009.03 at 6009–3 & n. 7). The *Lyngholm* and *Townview Nursing Home* cases were decided on the same grounds. *Lyngholm,* 24 F.3d at 91–92 ("Our holding in *Autoskill* relied on the plain language of Bankruptcy Rule 6009...."); *Townview Nursing Home,* 28 B.R. at 447. In *Townview,* the court wrote:

---

**6.** The Tenth Circuit did acknowledge its minority positions. "Six other circuits have held that filing bankruptcy automatically stays appellate proceedings in circumstances like that currently

before us, where the debtor has filed an appeal. [Citations given.] This circuit, however, has ruled to the contrary...." *Lyngholm,* 24 F.3d at 91.

Since Rule 610 [predecessor to Rule 6009] empowers a trustee and, so, a Debtor-in-possession, to defend against pending actions or proceedings against the bankrupt and, by inference, against proceedings which normally would be subject to Rule 11–44's [predecessor to section 362] automatic stay, *we view Rule 610 to empower a trustee* or Debtor-in-Possession, among other things, *to waive the protections* afforded by Rule 11–44.

28 B.R. at 447 (emphasis ours).

To the extent *Townview* relies upon the ability of the trustee to waive the benefits of the automatic stay, it must be distinguished at the outset. As stated above, the Courts of Appeals for the Second and Third Circuits have definitively held that a debtor may not unilaterally waive the benefits of the automatic stay. *E.g., Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) (citation omitted); *Maritime Elec. Co. v. United Jersey Bk.*, 959 F.2d 1194, 1204 (3d Cir.1991); *Association of St. Croix Cond. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982). The Third Circuit has written that the ability to waive the automatic stay, if it existed under the former Act, did not survive enactment of the Bankruptcy Code: "Under the old Bankruptcy Act, a debtor apparently could waive a stay. Under the new Code, relief from a stay must be authorized by the Bankruptcy Court. . . ." *St. Croix*, 682 F.2d at 448. The proscription against the trustee's ability to unilaterally waive or limit the stay has been law within the Second Circuit since 1986 pursuant to *Commerzanstalt*. However, since as stated above, the automatic stay's purpose is for the benefit of creditors as well as the debtor, the power to do so elsewhere now appears questionable at best.

■ We turn next to interpret Bankruptcy Rule 6009. We acknowledge that the Rule plainly furnishes a trustee with the discretion

to decide whether to litigate actions as it sets forth, and to do so with or without court approval. But we do not believe that it empowers a trustee to go forward with such litigation, unless the bankruptcy judge has granted relief from the automatic stay, after notice and a hearing. Our interpretation derives from the purpose the drafters intended to serve through enactment of Bankruptcy Rule 6009 and its predecessor, former Bankruptcy Rule 610. Under the former Bankruptcy Act, trustees and receivers were required to obtain court approval to prosecute actions or defend actions in which the estate had an interest; former Rule 610, however, was enacted to eliminate this requirement:

> Under the terms of § 11c of the Act, it was essential that the trustee or receiver have the approval and authorization of the bankruptcy court before he intervened as a plaintiff in the action. However, Rule 610 provides to the contrary, and *court approval is no longer a necessary prerequisite* to the trustee's intervention in, or prosecution or commencement of, a plenary suit. . . .

13 COLLIER ON BANKRUPTCY ¶ 610.06[3–2] at 6–118 (Lawrence P. King et al. eds., 14th ed. 1975) (footnote omitted) (emphasis ours). *See also* 1A COLLIER ON BANKRUPTCY ¶ 11.09 at 1182 (James Wm. Moore et al. eds., 14th ed. 1974) (decisively stating that purpose of former Bankruptcy Rule 610 was to allow trustee to litigate without need to first obtain bankruptcy judge approval)[7] (quoting *Moore Dry Goods Co. v. Mullinix*, 162 Ark. 126, 257 S.W. 389 (1924)); citing *Pett v. Spiegel*, 202 N.Y.S. 650 (N.Y.Cty.Sup.Ct.1923)).

Bankruptcy Rule 6009 was enacted with little change from former Rule 610. The Rule expressly affords the trustee with the discretion to determine *whether* an action in which the estate has an interest should be commenced, prosecuted or defended and whether such litigation would benefit the es-

---

**7.** This section of the Collier treatise instructs: The law was well settled that the trustee may, subject to the court's order, "exercise his own judgment with reference to defending a suit against the bankrupt at the time of the bankruptcy proceeding, and it is not necessarily his duty in such matters to follow the wishes of a majority in number and amount of the

creditors." He *may now do this, pursuant to Rule 610 without the court's order.*
1A COLLIER ON BANKRUPTCY ¶ 11.09 at 1182 (James Wm. Moore et al. eds., 14th ed. 1974) (emphasis ours) (quoting *Moore Dry Goods Co. v. Mullinix,* 162 Ark. 126, 257 S.W. 389 (1924)); (citing *Pett v. Spiegel,* 202 N.Y.S. 650 (N.Y.Cty.Sup.Ct.1923)).

tate. Approval of the trustee's decision by the bankruptcy judge has not been required since repeal of the former Bankruptcy Act. But Bankruptcy Code section 362 properly leaves with the bankruptcy judge the discretion and authority to decide *when* to let such action go forward. *E.g.*, SEN.REP. NO. 989, 95th Cong., 2d Sess. 49–50 (1978), H.R.REP. No. 595, 95th Cong., 1st Sess. 340–41 (1977), 1978 U.S.Code Cong. & Admin.News 5835, 6296, *reprinted in* NORTON BANKR.LAW AND PRAC.2D 218–21 (1993–94 ed.). Comments contained in the Legislative Reports are instructive on this point:

> The [automatic] stay is not permanent. There is adequate provision for relief from the stay elsewhere in the section. However, it is important that the trustee have an opportunity to inventory the debtor's position before proceeding with the administration of the case. Undoubtedly *the court will lift the stay for proceedings before specialized or nongovernmental tribunals to allow those proceedings to come to a conclusion.* Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets. Nevertheless, it will often be more appropriate to *permit proceedings to continue in their place of origin,* when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

SEN.REP. No. 989, 95th Cong., 2d Sess. 49–50 (1978), H.R.REP. No. 595, 95th Cong., 1st Sess. 340–41 (1977), 1978 U.S.Code Cong. & Admin.News at pp. 5835, 6296 (emphasis ours), *reprinted in* NORTON BANKR.LAW AND PRAC.2D 218–21 (1993–94 ed.). Were the trustee authorized to continue the non-bankruptcy proceedings referred to by the drafters, without modification of the automatic stay by the bankruptcy judge, the emphasized comments would be superfluous (if not incorrect).

Requiring a motion for modification of the stay also permits parties in interest with an opportunity to be heard on the issue. 11 U.S.C. § 362(d) (1994) (requires notice and hearing on motion for relief from automatic stay). The opportunity may be used to argue, for example, that creditors' claims may be fully satisfied prior to and without dependence upon the trustee's litigation in the non-bankruptcy tribunal. In this regard, the Third Circuit Court of Appeals has written:

> Because it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and about the effect that any judicial proceeding would have on the debtor's reorganization, *it is essential that he make the determination as to whether an action against the debtor may proceed or whether the stay against such actions should remain in effect.*

*Assoc. of St. Croix Cond. Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982) (emphasis ours). *See also Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1207 (3d Cir.1991); *Borman v. Raymark Indus., Inc.,* 946 F.2d 1031, 1036 (3d Cir.1991).

For the reasons given, we hold that Bankruptcy Rule 6009 does not authorize a debtor in possession or a trustee to pursue an appeal of an action initially commenced against the debtor, absent an order granting relief from the automatic stay. We instead concur with the reasoning of the vast majority of circuit and lower courts (and with the binding decisions of the Second Circuit Court of Appeals), and hold that Debtor in the instant case violated the automatic stay when it appealed from the Order of the New York County Supreme Court without having first obtained relief from the automatic stay. FDIC, as appellee, also violated the automatic stay by not seeking relief before proceeding with its action against Debtor.

## C. Acts Taken in Violation of the Stay are Void

■ It is well settled, if not universal, that acts taken in violation of the automatic stay are void and of null effect. *E.g., Kalb v. Feurstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (citing *Vallely v. Northern Fire Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297 (1920)); *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir.1987); *Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1204 (3d Cir.

1991)[8]; *Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125–26 (9th Cir.1989). Because Debtor's appeal of the Order was pursued in violation of the automatic stay, it necessarily constitutes a null and void act—as if it never happened. Having held that Debtor's appeal is void, we must next determine the status of the Judgment and of Justice Cahn's Order.

## D. Signing and Entry of Judgment Post-petition

As stated, in compliance with the direction contained in Justice Cahn's Order, the Clerk of New York County Supreme Court signed the Judgment on December 12, 1988 and entered it upon that court's docket on December 22, 1988. The Clerk's actions took place post-petition, Debtor's petition having been filed on December 9. Debtor argues that for these reasons the Judgment should be void and of null effect.

The only theory under which signature and entry of the Judgment by the state court clerk could be determined not to be void as a violation of the automatic stay, is the "ministerial acts" or "clerical acts" doctrine, found in a truly small number of reported decisions. Though our research has uncovered only eight published opinions in which the doctrine was given more than passing mention, the most recent decision was rendered by the Second Circuit Court of Appeals, and hence is binding. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994); *see also Savers Fed. Sav. and Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Devel. Co.)*, 884 F.2d 145, 148 (4th Cir.1989); *Heikkila v. Carver (In re Carver)*, 828 F.2d 463, 464 (8th Cir.1987); *Martinson v. First Nat'l Bk. of Oakes (In re Martinson)*, 26 B.R. 648, 654 (D.N.Dak.1983); *Apex Oil Co. v. United States Customs Serv. (In re Apex Oil Co.)*, 122 B.R. 559, 567 (Bankr.E.D.Mo. 1990); *In re Farmer*, 81 B.R. 857, 861 & n. 7 (Bankr.E.D.Pa.1988); *In re DiCello*, 80 B.R. 769, 773 (Bankr.E.D.N.C.1987); *Administrator of Veterans' Affairs v. Sparkman (In re Sparkman)*, 9 B.R. 359, 362 (Bankr.E.D.Pa. 1981).

In *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994), the District Court for the Southern District of New York had granted summary judgment to plaintiff, Rexnord Holdings, Inc., in an oral ruling rendered in court from the bench. *Id.* at 524. After the district court's bench ruling and its endorsement of the ruling on plaintiff's motion papers, the defendant, Bidermann, filed a petition for bankruptcy relief under chapter 11 of the Bankruptcy Code. Subsequent to Bidermann's bankruptcy filing, the Clerk of the District Court entered a money judgment against Bidermann on the court's docket. Bidermann appealed, asserting, as one of his two arguments, that the judgment against him should be vacated because it was entered "in contravention of the automatic stay that took effect when [he] filed his bankruptcy petition." *Id.* at 527. The Second Circuit Court of Appeals ruled against Bidermann on both his grounds for appeal. As to whether the judgment against Bidermann must be vacated for having been entered subsequent to his bankruptcy petition, the court ruled:

> While the commencement or continuation of a judicial action or proceeding

---

**8.** Certain reasons for voiding acts taken in violation of the automatic stay were well stated by the Third Circuit Court of Appeals:

> Holding that judicial acts and proceedings in violation of the automatic stay are void *ab initio* is consistent with the stay's function of "enabl[ing] the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'"

*Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir.1986) (quoting *In re Holtkamp*, 669 F.2d 505 (7th Cir.1982)). Consolidating all pre-petition claims against the debtor in one collective proceeding before a bankruptcy court is the essence of bankruptcy. *See* Thomas H. Jackson, *The Logics and Limits of Bankruptcy Law*, 7–19 *passim* (1986).

Also, by treating judicial acts and proceedings in violation of the stay void acts, we deter non-bankruptcy courts from continuing proceedings against a debtor who has sought federal bankruptcy protection. The result is to conserve debtor assets which should be marshalled to satisfy creditor claims instead of expended as legal costs in defending suits in violation of the stay.

*Maritime*, 959 F.2d at 1207 (footnote omitted).

clearly is subject to the automatic stay of section 362, we do not believe that the simple and "ministerial" act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1). *See Savers Fed. Sav. & Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.),* 884 F.2d 145, 148 (4th Cir.1989) (noting that, while court must halt deliberations when bankruptcy intrudes, an arbitration award may be approved "as valid under the [automatic] stay only if the panel decided it in word and deed before [the petition date], leaving for post-petition achievement only the clerical act of recording the award"); *Teachers Ins. & Annuity Ass'n v. Butler,* 58 B.R. 1019, 1022 (S.D.N.Y.) (rejecting argument that entry of judgment was "void and of no legal force or effect" on ground that filing of the signed judgment and entry on the docket by the clerk "was a purely ministerial act" that did not violate the automatic stay of § 362), *motion to stay granted in part and denied in part,* 803 F.2d 61 (2d Cir.1986). *See also Heikkila v. Carver (In re Carver),* 828 F.2d 463, 464 (8th Cir.1987) (rejecting debtor's claim that "routine certification" by clerk of court that debtor failed to redeem contract within redemption period was "judicial proceeding" within meaning of § 362).

In the present case, the district court "So ordered" the entry of judgment and endorsed [plaintiff's] motion papers to that effect on July 7, prior to the filing of Bidermann's bankruptcy petition later that afternoon. The judicial proceedings were concluded at the moment the judge directed entry of judgment, a decision on the merits having then been rendered. *See Teacher's Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 66 (2d Cir.1986).... The clerk's subsequent entry of the judgment, after the automatic stay became effective, therefore did not violate section 362(a)(1). *See Knightsbridge Dev. Co.,* 884 F.2d at 148 (section 362(a)(1) permits "rote post-petition activity" according to "plain sense" of statute).

The authorities relied upon by Bidermann as suggesting that entry of judgment violates the automatic stay are inapposite because the cases cited involve judicial decisions made after the filing of petitions in bankruptcy. Those cases do not implicate mere ministerial acts performed by the clerk following the completion of the judicial function. *See, e.g., Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372–73 (10th Cir.1990) (district court decision granting summary judgment two weeks after bankruptcy petition was filed held invalid); *Ellison v. Northwest Eng'g Co.,* 707 F.2d 1310 (11th Cir.1983) (automatic stay provision barred appellate court from rendering decision on case that had been briefed and argued prior to commencement of stay). Because the entry of a judgment on the court docket is not the continuation of a judicial proceeding within the meaning of section 362(a)(1), the judgment entered in this case was not entered in violation of the automatic stay and, accordingly, is valid.

*Bidermann,* 21 F.3d at 527–28.

■ Under *Bidermann,* therefore, entry of a judgment will constitute a "ministerial act" where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment upon the court's docket. *Id.* (citing *Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 66 (2d Cir.1986); *Savers Fed. Sav. and Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Devel. Co.),* 884 F.2d 145, 148 (4th Cir.1989); *Ellison v. Northwest Eng. Co.,* 707 F.2d 1310 (11th Cir.1983); *Teachers Ins. and Annuity Assoc. v. Butler,* 58 B.R. 1019, 1022 (S.D.N.Y.), *aff'd,* 803 F.2d 61 (2d Cir.1986) ("The filing of the signed judgment and entry upon the Court's docket by the Clerk of the Court required no action ... in violation of the stay.... and was a purely ministerial act performed by the Clerk of the Court")).

■ Furthermore, where entry of a judgment (or other task) is a ministerial act, it does not constitute the "continuation of a judicial proceeding against the debtor", as that phrase is employed by section 362(a)(1),

and is not stayed by the filing of a bankruptcy petition.[9]

In the instant case, the State Court Clerk's signing and entering of the Judgment upon the State Court's docket were ministerial acts (or rote functions) under *Bidermann*, since they took place after the judicial function had been completed. The judicial function was complete when Justice Cahn of the New York County Supreme Court signed his Order directing the clerk of that court to enter a money judgment against Debtor. Under *Bidermann*, therefore, signature and entry of the Judgment were not stayed since these acts did not constitute the continuation of a judicial proceeding within the meaning of Bankruptcy Code section 362(a)(1). *Bidermann; see* 11 U.S.C. 362(a)(1) (1994). The Judgment against Debtor is accordingly valid.

As to Justice Cahn's signing and the State Court's entering of his Order on the same day Debtor filed its petition for bankruptcy relief, we have not been informed by the parties whether these events occurred pre- or post-petition. Absent definitive knowledge, let alone suggestion, from the parties who had the opportunity to argue upon this point, the Court will not speculate, for "ordinarily the law will not undertake to divide a day." *Doyle v. Executors of Nemer-*

*ov,* 223 F.2d 54, 57 (2d Cir.1955) (Hand, C.J.). We hold that Justice Cahn's Order was signed and entered pre-petition and is therefore valid.

### E. Status of FDIC's Claim

FDIC's claim against Debtor's estate must be allowed in full as it presently stands. A judgment entered after the automatic stay is in effect is still final for res judicata purposes. *Teachers Ins. and Annuity Assoc. v. Butler,* 803 F.2d 61, 66 (2d Cir.1986) ("Although the judgment did not become final for purposes of appealability until February 6, 1986 when it was entered on the docket—after the automatic stay in bankruptcy had come into effect on January 31st—the judgment was nevertheless final for res judicata purposes.") (citing *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1191 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983)).

Indeed, under *Bidermann,* FDIC's claim is pursuant to the validly signed and entered Judgment which is final [10] and which

---

**9.** The *Bidermann* rationale appears inapplicable where entry of a judgment creates a lien upon real property of the judgment debtor. In New York's supreme and county courts, mere entry of a judgment makes the judgment a lien upon any interest in realty held by the judgment debtor. N.Y.Civ.Prac.L. & R. 5016(a), 5018(a), 9702(1) (McKinney 1994); N.Y. County Law §§ 525, 909 (McKinney 1994); David D. Siegel, New York Practice §§ 418, 421, 518 (2d ed. 1991). Such action by the clerk would be more than rote and "ministerial," and, though it might not constitute the "continuation of a judicial proceeding" within the *Bidermann* construction of that phrase, it may violate sections 362(a)(3) and (4) which stay "any act" to create a lien against property of the debtor's estate. 11 U.S.C. § 362(a)(3), (4) (1994). Since mere entry of the judgment is the act which creates the lien, it presumably is an act which is expressly stayed by section 362(a)(3) and (4). *E.g.,* HR Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); Sen.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), 1978 U.S.Code Cong. & Admin.News at pp. 6296, 5835, *reprinted in* Norton Bankruptcy Law and Practice 2d 225 (1993–94) ("To permit lien creation after bankruptcy would give certain creditors preferential treatment by making them secured instead of unsecured.").

This scenario was not addressed by the Second Circuit in *Bidermann,* nor does it appear applicable in the instant case since neither Debtor's counsel nor its bankruptcy petition noted ownership of any interest in real property.

**10.** *E.g., Good Health Dairy Prods. Corp. v. Emery,* 275 N.Y. 14, 9 N.E.2d 758 (1937); *In re Adoption of Anonymous,* 71 Misc.2d 943, 337 N.Y.S.2d 428 (Surr.Ct., Erie Cty.1972) (final judgment is final determination of rights of parties); *see* David D. Siegel, New York Practice §§ 444, 445 (2d ed. 1991) (discussing finality) (citing Restatement 2d Judg. § 13).

As to the finality of a judgment which may still be appealed, Professor Siegel's treatise provides: "The fact that the time in which to appeal the judgment is still open or, indeed, that an appeal has in fact been taken and is pending, does not divest the judgment of its finality in New York. The judgment is still entitled to its res judicata effect...." Siegel, *supra* § 444 at 676 (citing *Parkhurst v. Berdell,* 110 N.Y. 386 (1888)). Thus, for purposes of claim or issue preclusion, the "finality" that is required is a final and necessary determination on the merits of the issues. *State Bk. of Albany v. McAuliffe,* 108 A.D.2d 979, 485

constitutes a res judicata bar to relitigation of any dispute regarding the underlying merits. 28 U.S.C. § 1738 (1994); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *see, e.g., Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981) (final judgment may not be altered even if wrong); *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Kohn v. Leavitt–Berner Tanning Corp.,* 157 B.R. 523, 526 (Bankr.N.D.N.Y. 1993). A bankruptcy court may not be used to relitigate issues resolved by final judgment, unless the judgment was procured through fraud. *Heiser,* 327 U.S. at 736, 66 S.Ct. at 857–58. Debtor may not therefore object to FDIC's claim by disputing the issues that were before and finally and necessarily decided by Justice Cahn of the New York County Supreme Court.

■ Though we hold the appeal of the Order void, Debtor, or creditors of the estate, may consider a properly pursued appeal worthwhile. Debtor vigorously argues that such an appeal would be meritorious. Allowing an appeal to go forward correctly prevents this Court from being rendered an appellate court for the State Court proceedings. *Metz v. Poughkeepsie Sav. Bk. (In re Metz),* 165 B.R. 769, 771 (Bankr.E.D.N.Y. 1994) (quoting *Bessing v. Hawthorne (In re Bessing),* 981 F.2d 1488, 1496 (5th Cir.1993)). Moreover, a victory by FDIC would eliminate Debtor's objection to the claim, whereas a victory by Debtor would eliminate the dispute as well as benefit the estate. Since it is presently as if Debtor never pursued an appeal, and the automatic stay has not been modified, the time within which Debtor may appeal the Judgment has been tolled by statute and has not expired. 11 U.S.C. 108(c)(2) (1994). Debtor is directed to file a motion for relief from the stay within 30 days of the date hereof if it desires leave to appeal.

## F. Any Fees for Void Appeal Must be Disgorged

■ The final issue is the cost to the estate of the professional fees paid to the attorneys that represented Debtor in its appeal of the Order. The Court holds that these services rendered on Debtor's appeal did not benefit the estate in any way. The firm pursued the appeal in violation of the automatic stay and the effect of their services is null and void. Debtor's creditors suffered improper depletion of estate assets by any payment of the legal costs of Debtor's void appeal. *See, e.g., Borman v. Raymark Indus., Inc.,* 946 F.2d 1031, 1036 (3d Cir.1991) (Among other things, the "automatic stay was designed 'to ... forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it.'") (quoting *Association of St. Croix Cond. Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982)); *Maritime Elec. Co. v. United Jersey Bk.,* 959 F.2d 1194, 1204 (3d Cir.1991) ("the stay 'protect[s] the bankrupt's estate from being eaten away by creditors' lawsuits'") (quoting *Martin–Trigona v. Champion Fed. Sav. & Loan Assoc.,* 892 F.2d 575, 577 (7th Cir.1989)); *Maritime,* 959 F.2d at 1207 (citing authorities).

Since the appeal pursued by Debtor's appellate counsel was improper and is void, any order granting payment of counsel fees by the estate must be vacated, and the fees

N.Y.S.2d 139 (3d Dep't 1985) *appeal denied,* 65 N.Y.2d 741, 492 N.Y.S.2d 30, 481 N.E.2d 570 (1985) ("[F]inality for collateral estoppel purposes occurs when issues have been necessarily determined in a prior final disposition of a cause of action on the merits.... '[A]ny finding essential to the judgment constitutes a component of that judgment and lends itself to an estoppel[.]'") (quoting DAVID D. SIEGEL, NEW YORK PRACTICE § 464 at 614 (1978)). *See also* 73 N.Y.JUR.2D §§ 358 ("[I]n New York ... the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding."); *id.* § 360 ("A judgment, until reversed, is conclusive between parties to the record upon all matters directly adjudicated, and so long as the judgment is in force it must be deemed to have determined the parties' respective rights, and the courts are bound to give effect to the determination.") (citing *Williamsburgh Sav. Bk. v. Bernstein,* 277 N.Y. 11, 12 N.E.2d 551 (1938)).

must be disgorged. 11 U.S.C. 105(a); Fed. R.Bankr.P. 9023 (1994) (which makes applicable Federal Rule of Civil Procedure 59). As to the FDIC, which was appellee to Debtor's appeal of the Judgment the Court finds that its actions similarly violated the stay and as such are void. But sanctions are not warranted since fees paid by the estate (if any) for Debtor's appeal are being returned to the estate. Any redress omitted by the Court for other damages to the estate caused by the violation(s) of the automatic stay may be dealt with through proper request by Debtor, any creditor or party in interest, or the Office of the United States Trustee.

### G. Conclusion

For all the foregoing reasons, the Court holds that: Debtor's appeal of the Judgment was pursued in violation of the automatic stay and is accordingly **VOID** and of null effect; Justice Cahn's Order and FDIC's Judgment were both validly signed and entered; Debtor's objection to FDIC's claim is **DENIED** and the claim is allowed in full; Debtor has 30 days to file a motion for relief from the automatic stay in order to pursue an appeal, at which time the Court will hear whether opposition to such motion exists; if Debtor does not file this motion within such time (or within the time extended by Court order), FDIC may file a motion to terminate the automatic stay and the toll [11] upon Debtor's time to appeal the Judgment; any Order allowing fees to the firm of Snitow & Pauley for services rendered and fees incurred in representing Debtor in its now void appeal of the Judgment is **VACATED;** the firm of Snitow & Pauley is **DIRECTED** to **DISGORGE** and pay to Debtor's special counsel, Phillips, Nizer, Benjamin, Krim & Ballon ("Phillips, Nizer"), to be received by Phillips, Nizer on behalf of Debtor's estate on or before August 5, 1994, any funds received for services rendered in connection with Debtor's appeal of the Order or Judgment to the Appellate Division of New York County Supreme Court; Phillips, Nizer is authorized and empowered to do any and all such acts as are reasonable and necessary to implement collection of the disgorged fees; Phil-

lips, Nizer is **DIRECTED** to apprise the Court, in writing filed on or before July 27, 1994, of the status of any and all malpractice actions previously commenced by or on behalf of Debtor, and of any funds collected pursuant to this opinion and order.

### SO ORDERED.